UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK SARGENT,<br>    *Plaintiff,*<br>    *v.*<br>JANE EMONS and THE JUDICIAL BRANCH OF THE STATE OF CONNECTICUT,<br>    *Defendants.* | Civil No. 3:13cv863 (JBA)<br><br>December 9, 2013 |

**RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

On June 17, 2013, Plaintiff Mark Sargent filed this action against Defendant Jane Emons, a Connecticut Superior Court judge, and Defendant the Judicial Branch of the State of Connecticut (the "Judicial Branch") pursuant to 42 U.S.C. § 1983, alleging violations of his Fifth and Fourteen Amendment rights to due process and his First Amendment right to free association related to Defendant Emons's actions in her capacity as the presiding judge for the judicial district where his child custody dispute with his wife was filed.[1]  (*See* Verified Compl. [Doc. # 1-1].)   Plaintiff seeks injunctive relief from this Court to (1) enjoin Defendants from issuing orders altering the rights of parties without adequate notice and a meaningful opportunity to be heard; (2) enjoin Defendants from issuing such orders via "status conferences;" (3) enjoin Defendants from delegating "parenting rights" to court-appointed guardians ad litem without adequate notice and a meaningful opportunity to be heard; (4) order Defendant Emons to vacate several orders previously issued in Plaintiff's child custody case; (5) order Defendant Emons to vacate orders granting various "parenting rights" over his children to a guardian ad litem; and (6) appoint a special master to review the Judicial Branch's policies

---

[1] At oral argument, Plaintiff's counsel advised that Judge Emons has since assigned Plaintiff's child custody case to Superior Court Judge Monroe for purposes of completing discovery and holding a hearing on pending motions.

and procedures regarding guardians ad litem. When he filed his Complaint, Plaintiff also moved [Doc. # 2] for a Temporary Restraining Order ("TRO") enjoining Defendants from holding further hearings in his child custody case. On June 26, 2013, the Court denied Plaintiff's motion for a TRO, based on substantial doubt regarding the Court's jurisdiction. (*See* June 26, 2013 Order [Doc. # 9].) Plaintiff now moves [Doc. # 13] for a preliminary injunction to enjoin Defendants from holding further hearings in his child custody case. For the following reasons, Plaintiff's motion for a preliminary injunction is denied, and the case will be dismissed for lack of jurisdiction.

## I. Background Set Out in Plaintiff's Complaint

Plaintiff is a divorced father of three minor children. (*See* Compl. ¶ 3.) Pursuant to the August 2012 order of judgment in his divorce proceeding, Plaintiff has sole legal custody of his children. (*See id.* ¶¶ 3, 6.) For the past six years, Plaintiff has been the primary, stay-at-home caregiver for his children, and has had sole physical custody of the children since the divorce filing. (*See id.* ¶ 7.) As a result, Plaintiff often takes his children with him when he travels out of state. (*See id.* ¶ 22.) The children's mother has been subject to significant restrictions on her contact with the children: she is presently permitted to see the children three times a week, but not for overnight visits. (*See id.*) Plaintiff has hired two therapists to treat the minor children in relation to the impact of their parents' divorce. (*See id.* ¶ 9.) Plaintiff "instructs" these therapists pursuant to the order of judgment in his divorce proceedings giving him sole legal custody over his children and the sole responsibility for making decisions regarding their medical care. (*See id.*)

The Connecticut Superior Court appointed Dr. Joan Oppenheim as guardian ad litem for Plaintiff's children in relation to the divorce and custody proceedings. (*See id.*

¶ 10.)  Plaintiff has filed multiple motions during those proceedings objecting to Dr. Oppenheim's ethics, competence, and excessive fees based on his belief that she was acting to further her own financial interest, rather than in the best interest of Plaintiff's children.  (*See id.*)  Despite Plaintiff's protests, and the concerns of one of the therapists employed by Plaintiff, Dr. Oppenheim remains the guardian ad litem of the children and continues to employ the billing practices to which Plaintiff objects.  (*See id.* ¶¶ 10–11.)  Defendants have a policy and practice of permitting such guardians ad litem to exercise parental rights regarding children over parents' similar objections, without providing a forum for parents to challenge this practice without fear of reprisal.  (*See id.* ¶¶ 24, 26.)

Although she had previously established a domicile in Florida, in March 2013, the children's mother returned to the state, and sought to amend the custody order to increase her parenting time with her children.  (*See id.* ¶ 12.)  Since that time, Plaintiff and his ex-wife have been engaged in motion practice seeking to clarify the rights and responsibilities of each parent regarding the custody of their three children.  (*See id.*)  Specifically, Plaintiff is seeking to limit the children's contact with an individual associated with their mother, whom Dr. Oppenheim and the children's therapists have determined may pose a risk to the health and safety of the children.  (*See id.* ¶ 13.)

During the recent developments in the underlying circumstances of Plaintiff's child custody case, Defendant Emons has scheduled periodic "status conferences" to discuss the case.  (*See id.* ¶ 14.)  Plaintiff alleges that Defendant Emons collects information regarding the status of the case in an ad hoc basis during these conferences, which are not subject to rules of law or procedure.  (*See id.*)  Defendant Emons also issues oral orders regarding the respective rights of Plaintiff and his ex-wife during these conferences.  (*See id.* ¶ 15.)  Specifically, during a June 11, 2013 status conference,

Defendant Emons ordered (1) that Dr. Oppenheim would develop a plan with the children's therapists for the children to be introduced to the person of concern associated with their mother; (2) that Plaintiff could not take his children out of the state without seeking court permission in advance; and (3) that Plaintiff had to provide his ex-wife with the children's insurance and medical information. (*See id.* ¶ 16.)  Plaintiff alleges that he did not have prior notice that these topics would be addressed and was denied a meaningful opportunity to be heard on the merits of these issues.  (*See id.* ¶ 17.)  Defendant Emons's orders during such conferences are not issued in writing, and Plaintiff must purchase transcripts in order to properly give effect to these orders. (*See id.* ¶ 18.)  Plaintiff alleges that Defendants have a practice of issuing similar orders without notice or an opportunity to be heard in other child custody proceedings.  (*See id.* 23.)

## II. Legal Standard

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990).  Generally, a party seeking a preliminary injunction must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal citations and quotation marks omitted). However, "[a] mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo, should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a

denial of preliminary relief." *Id.* at 35 n.4 (internal citations and quotation marks omitted).[2]

### III.  Discussion

Plaintiff argues that he is likely to succeed on the merits of his claims, and that he will suffer irreparable harm absent injunctive relief. Defendants counter that the Court must decline jurisdiction over this case based on the principles of several abstention doctrines, that they are immune from suit, and that Plaintiff has failed to show a likelihood of success on the merits.[3]

#### A.  *Younger* Abstention

Pursuant to the *Younger* abstention doctrine, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citing *Younger v. Harris*, 401 U.S. 37, 43–45 (1971)). While *Younger* arose in the context of ongoing state criminal proceedings, *Younger* abstention has also been applied in the context of ongoing state civil proceedings, including ongoing custody disputes in state court. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 520–21 (E.D.N.Y. 2010). The *Younger* doctrine rests on principles of comity and federalism. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987). It reflects the principle that equitable relief should not be granted unless there is no adequate remedy at law. *Id. Younger*'s application is important for two reasons. First, comity requires the preservation of mutual respect for the legitimate interests of state and federal governments so that as the federal government seeks to protect federal rights it

---

[2] At oral argument, Plaintiff's counsel acknowledged that Plaintiff was seeking a mandatory injunction and that the heightened standard applies.

[3] Because the Court concludes that it must abstain from exercising jurisdiction over this case, and that Defendants are immune from suit, it will not address the substantive merits of Plaintiff's claims.

does not unduly interfere with legitimate state activities. *Id.* Second, abstention avoids merely advisory, non-binding federal constitutional determinations based upon an interpretation of state law. *Id.* The Second Circuit has ruled "that abstention under *Younger* is mandatory when: (1) there is a pending state proceeding, (2) that [proceeding] implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Abuzaid v. Mattox*, 726 F.3d 311, 316 (2d Cir. 2013) (internal citations and quotation marks omitted) (alterations in original). Defendant maintains that each of these elements is satisfied in this case and that the Court must therefore abstain from exercising jurisdiction over this matter.

### 1. Pending State Proceeding

Plaintiff claims that there is no pending state proceeding in this case because Defendant Emons already approved the Separation Agreement in his divorce case, and his constitutional claims relate to the post-judgment motion practice in his ongoing child custody dispute with his ex-wife. Plaintiff argues that the state court is essentially holding him in "purgatory without process," and that the Court should therefore be permitted to grant injunctive relief in this case. (*See* Pl.'s Mem. Supp. [Doc. # 13-1] at 13.)

However, as Defendants explain in their brief, federal courts, including the Supreme Court, have applied the principles of *Younger* abstention in the context of ongoing post-judgment proceedings in state court. For example, in *Juidice v. Vail*, 430 U.S. 327 (1977), the Supreme Court found that *Younger* abstention applied to bar a suit by Vail challenging the constitutionality of New York state contempt proceedings. There, default judgment had entered against Vail in a state court case. *Id.* at 329. Several months later, the state court issued a subpoena ordering Vail to appear at a deposition to

provide information to assist in the satisfaction of the default judgment. *Id.* When Vail failed to appear at the deposition, or at a hearing to show cause why he should not be held in contempt, the state court issued an order holding him in contempt. *Id.* Although the Supreme Court did not explicitly state that the post-judgment proceedings in state court satisfied the requirement that a state court action be "pending," it held that the principles of *Younger* applied to bar the federal court from hearing Vail's constitutional challenge. *Id.* at 338–39. This Court thus infers that ongoing post-judgment proceedings constitute a "pending" state court action for *Younger* purposes. *See also AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) (holding that ongoing post-judgment proceedings satisfy the first element of *Younger*).

Based on the allegations in the Verified Complaint, the post-judgment motion practice in Plaintiff's state court custody dispute was ongoing at the time this suit was filed on June 17, 2013, and the most recent challenged status conference had been held only six days prior. (*See* Verified Compl. ¶ 18.) A review of the docket in the state court proceeding indicates that such status conferences continued well into September. (*See* State Court Docket, Ex. 1 to Defs.' Opp'n [Doc. # 18] at 6.)[4] Further, Plaintiff's counsel represented at oral argument that the parties are currently in the midst of discovery to prepare for a hearing on the pending custody motions in the state court action. In fact,

---

[4] Defendants have attached to their opposition the state court docket, Plaintiff's separation agreement, and transcripts of status conferences in which Defendant Emons issued oral orders, arguing that the Court may consider them because they have been incorporated by reference in the Verified Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)). Plaintiff does not object to the consideration of these documents.

the Connecticut General Statutes specifically contemplate the ongoing jurisdiction of the Connecticut Superior Court over custody matters after final judgment has entered in a divorce case. *See* Conn. Gen. Stat. § 46b-56; *see also Lynch v. Lynch*, 135 Conn. App. 40, 56 (2012) ("The court . . . retains continuing jurisdiction to modify final orders for the periodic payment of alimony or support, and the care, custody and visitation of minor children."). Thus, the first prong of *Younger* is satisfied.

### 2. Important State Interest

Plaintiff concedes that this matter implicates an important state interest, to wit: familial relations and the custody of children. (*See* Pl.'s Mem. Supp. at 13–14); *see also McKnight*, 699 F. Supp. 2d at 520 ("[T]he heart of this case is a child custody dispute, a matter rightfully reserved for state courts. Thus, it is without question that this matter involves an important state interest." (internal citations and quotation marks omitted)).[5] However, Plaintiff does attempt to argue that the interim custody orders to which he objects are not truly the subject of this case. Rather he claims that this is a case about due process. Nonetheless, as Defendants note, courts apply the *Younger* abstention doctrine even in cases where the plaintiffs claim due process violations, and thus the Plaintiff's important constitutional interest in this case does not diminish the state's interest in adjudicating cases involving domestic relations. *See Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391 (2d Cir. 1995) (applying *Younger* abstention in a case

---

[5] When viewed against this backdrop, the case for *Younger* abstention in this matter becomes clearer, as federal courts have long recognized the primacy of states in questions of domestic relations. *See United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013) ("Federal courts will not hear divorce and custody cases . . . because of the virtually exclusive primacy of the States in the regulation of domestic relations." (internal citations and quotation marks omitted)).

raising a due process challenge to the state's lay justice system). Therefore, the second prong of *Younger* is satisfied in this case.

### 3. Adequate Opportunity for Judicial Review

"No more is required to invoke *Younger* abstention," than that plaintiffs have "an opportunity to present their federal claims in the state proceedings." *Vail*, 430 U.S. at 337. "The relevant question under *Younger* is whether the state's procedural remedies *could* provide the relief sought [not] . . . whether the state *will* provide the constitutional ruling which the plaintiff seeks." *Spargo*, 351 F.3d at 79. Plaintiffs bear the burden of affirmatively establishing that state law bars the presentation of their claims, and merely pointing to ambiguities in state law is insufficient to bar the application of *Younger*. *See id.* at 78. Plaintiff argues that he lacks an adequate opportunity to present his federal constitutional claims in the state court custody proceeding, but does not explain how he is barred from raising these claims, other than to state that he is currently being deprived of his constitutional rights without any process. He references no unsuccessful attempts to obtain review in state court and cites no legal authority establishing that the claims at issue in this suit could not be brought as a part of an appeal of his custody case in state court.

While Defendants recognize a lack of clarity as to whether the custody orders that Plaintiff is challenging are immediately appealable, in *McKnight*, the district court applied *Younger* where the plaintiff challenged interim Family Court rulings that were not immediately appealable because nothing precluded the plaintiff from raising his federal claims in a state appellate court after the final Family Court order had issued. 699 F. Supp. 2d at 521. Connecticut appellate courts have previously considered due process challenges to final custody orders, and thus when a ruling issues on the pending motions

in Plaintiff's custody case that functions as a final order for the purposes of appeal, Plaintiff can raise his federal constitutional claims in a state appeal of that ruling. *See Cappetta v. Cappetta*, 196 Conn. 10 (1985) (considering due process challenge to final custody award).

Plaintiff attempts to distinguish *McKnight*, arguing that unlike the circumstances of that case, he is not seeking return of custody of his children, and his complaints address post-judgment, rather than pre-judgment process. Plaintiff argues that here the terms of custody are being modified on an ad hoc basis in temporary rulings. Therefore, he claims it is possible that his custodial rights could be eroded through a series of temporary rulings without a judge ever issuing a final, appealable custody order. However, in some circumstances, Connecticut appellate courts have reviewed interlocutory custody orders. *See Fish v. Fish*, 285 Conn. 24, 120 (2008) ("This court has understood that a temporary deprivation of a parent's constitutional right to care and custody of his or her child gives rise to a risk of such irreparable harm that it has deemed interlocutory orders affecting that interest final judgments for purposes of appeal." (collecting cases)). Plaintiff points to no authority that the orders of which he complains or any future "temporary" orders could never constitute "final judgments" in the eyes of the Connecticut appellate courts, or otherwise be reviewed on interlocutory appeal. Thus, all three elements of *Younger* are satisfied in this case, and the Court must abstain from exercising jurisdiction over this matter.[6]

---

[6] The principles expressed by the Supreme Court in *O'Shea v. Littleton*, 414 U.S. 488 (1974), also require this Court's abstention. Plaintiff requests not only an injunction directing Defendant Emons to vacate several orders in Plaintiff's ongoing custody battle, but also that the Judicial Branch be enjoined from issuing rulings at status conferences or appointing guardians ad litem without notice and an opportunity to be heard. Such an order would necessarily invite federal intervention in an enormous number of state court

B.   **Immunity**

Alternatively, Plaintiff's claims against the Judicial Branch are clearly barred by the Eleventh Amendment, as a lawsuit against a state by its own citizen, *see Hans v. Louisiana,* 134 U.S. 1, 18–19 (1890), where the state has not waived its sovereign immunity nor has Congress abrogated it through legislative action, s*ee Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–101 (1984). The Eleventh Amendment's grant of sovereign immunity extends to entities considered to be "arm[s] of the State," *Mt. Healthy City Sch. Bd. of Educ. v. Boyle,* 429 U.S. 274, 280 (1977), although not to individual state officials sued in their official capacity where only prospective injunctive relief is sought, *see Va. Office for Prot. and Advocacy v. Stewart,* 131 S. Ct. 1632, 1638 (2011) (citing *Ex Parte Young,* 209 U.S. 123 (1908)). The Judicial Branch is a department of the State of Connecticut, *see* Conn. Gen. Stat. § 51-1, and has previously been determined to be immune from suit under the Eleventh Amendment, *see Daigneault v. State of Conn. Judicial Branch*, No. 3-07-cv-122 (JCH), 2007 WL 869028, at *2 (D. Conn. Mar. 19, 2007) *aff'd* 309 F. App'x 518 (2d Cir. 2009). Further, "in enacting 42 U.S.C.

---

custody proceedings to review whether or not constitutionally sufficient notice and hearing opportunity had been provided. Furthermore, Plaintiff also requests that a special master be appointed to review the entire guardian ad litem system in the Connecticut courts. It is hard to imagine a more extensive and protracted form of intervention into the state family law court system than the relief requested by Plaintiff. Such relief "would constitute a form of monitoring of the operation of state court functions that is antipathetic to the established principles of comity." *O'Shea*, 414 U.S. at 501; *see also id.* at 500 (holding that the consideration of the plaintiffs' claims would lead to "an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* . . . sought to prevent."); *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) ("[T]he federal courts cannot legislate and engraft new procedures upon existing state . . . practices" because "[s]uch interference with the state . . . process in both pending and future . . . proceedings would violate principles of comity set forth in *Younger*.").

§ 1983, Congress did not abrogate the immunity from suit that the Eleventh Amendment provides a state." *King v. Cuomo,* No. 08–CV–6058 (SHS), 2011 WL 13944, at *4 (S.D.N.Y. Jan. 4, 2011) *aff'd in part,* 465 F. App'x 42 (2d Cir. 2012) (citing *Quern v. Jordan,* 440 U.S. 332, 345 (1979)).  Thus, the Judicial Branch is immune from suit on Plaintiff's claims.

Plaintiff's claims against Judge Emons are clearly barred by the doctrine of judicial immunity.  "Section 1983 suits for damages are absolutely barred against judicial actors for actions performed in their official capacities.  Moreover, under the 1996 Federal Courts Improvement Act, injunctive relief cannot be granted against a judicial actor *unless* a declaratory decree was violated or declaratory relief was unavailable or *unless* the judge's conduct was clearly in excess of the judge's jurisdiction." *Hodges v. Mangano*, 28 F. App'x 75, 77 (2d Cir. 2002) (internal citations and quotation marks omitted) (emphasis in original).  Because the acts of which Plaintiff complains in the Verified Complaint undisputedly arose from orders issued by Judge Emons during the pendency of the child custody dispute before her, Plaintiff cannot raise a colorable argument that Judge Emons was not acting in her judicial capacity for the purposes of this suit.  Nor has he alleged that she acted in violation of any declaratory decree or in excess of her jurisdiction.  *See* Conn. Gen. Stat. § 46b-56 (granting continuing jurisdiction to the Connecticut Superior Court over custody matters in divorce cases).  Thus Judge Emons is also immune from suit on Plaintiff's claims.

Because the Court lacks jurisdiction to hear this case, and Defendants are immune from suit, absent claim of any exempting "special circumstances,"[7] Plaintiff's motion for a preliminary injunction from this Court necessarily fails.

### IV.     Conclusion

For the foregoing reasons, the Court concludes that it lacks jurisdiction over this case pursuant to the *Younger* abstention doctrine and the immunity of Defendants. Plaintiff's Motion [Doc. # 13] for a Preliminary Injunction is therefore DENIED, and the case is dismissed for lack of jurisdiction.  The Clerk is directed to close this case.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of December, 2013.

---

[7] The "special circumstances" exception to *Younger* applies if a complaint alleges bad faith, harassment, irreparable injury that is both serious and immediate, or any other unusual circumstances that call for equitable relief.  *See Pathways, Inc. v. Dune*, 329 F.3d 108, 113 (2d Cir. 2003); *see also Terminix Intern. Co. v. Rocque*, 2010 F. Supp. 2d 97, 101 (D. Conn. 2002).